and this will be heard by two judges under our local rule. The case had been scheduled and Judge Sack realized that he was recused in this matter. So Judge Rakoff and I will hear it and we'll proceed as we are allowed to do under the local rule. We're going to proceed. Thank you. Good morning, your honors. I'm Mark Schneider. I'm representing Rochelle Gough in this SSI and Social Security Disability Appeal. In Lemay v. Astrue, this court held that in the Second Circuit, ALJs do not have an enhanced duty to recommend that pro se claimants in social security appeals get a lawyer. But what the court held is once a pro se claimant is allowed to go ahead pro se, it enhances and there's a heightened duty to the ALJ to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts. In this case, Mrs. Gough was unrepresented as that was fine, but the ALJ did not attempt to contact the numerous treating psychiatrists and therapists and get their she had the ability to work. If he had a full record, why does he need to do that? Well, it really wasn't full because nobody had contacted the treating physicians and sources to get their opinions. And in analyzing the case, the ALJ gave great weight to a non-examining consulting source, which in and of itself normally is not substantial evidence. But in this case It can be, though, right? It could be, but you'd have to analyze from both sides. You have to look at the treating sources and explain why their opinions and findings are not to be given great weight. And particularly when somebody is unrepresented, the judge then takes over almost the role of the attorney and has to really try to develop her case. How did their opinion materially differ from the non-treating physician? Oh, well, there's a long history, a long longitudinal history of her having severe and great mental health symptoms. Primarily depression. Primarily depression. And anxiety. I think it was both. And she was hospitalized twice. She was unable to function. Each time, correct me if I have this wrong, but each time she was hospitalized, they changed her medication and she got much better and she was able to function again. She was never able to go back to work. I mean, she was barely functional. Occasionally she was a little bit better. But reading that record and giving any weight to the treating sources, it would appear that she would be unable to work on a full-time, sustained basis. And normally, even when there is a lawyer, the ALJ is required to at least analyze what the treating sources said. And here, she was treated by five or six board-certified psychiatrists who noted her tangential thinking, who noted that she sometimes was so, her incredible sadness, her inability to concentrate and focus. The record shows she lost her last job because she had a meltdown when she couldn't get along with people. Even the examining consultative psychologist noted she had moderate difficulties getting along with people and concentrating, which in and of itself would prevent somebody from working on a full-time, sustained basis. I've really never seen a case like this where the judge did not analyze at all the treating psychiatrist and gave greater weight to the non-examining  Sotomayor, should we send it back for that analysis? Yes. Let me ask you this, Mr. Schneider. As I read your brief in this case, your briefing in this case, it seems to me your principal argument, or one of your principal arguments, but maybe the more dominant one, is that, look, we have all of this stuff, but the ALJ did not do an analysis that we can look at and figure out how he got to where, I think it's he got to where he got. I think there's enough evidence to rule in her favor, as happened in the subsequent case, and, of course, that's not determinative, but it is evidence that, based essentially on the same evidence, another ALJ found that she met the listings. Now, of course that It's a different period. Of course. It's a government period. Of course. But he did review these same records, and there's no evidence that she got worse. So is she sorry, let me just take a quick sidestep here. Yes. Is your client currently receiving benefits? She's currently on disability. Yes. Starting the day after this decision, the subsequent judge found that she met the listings. Now, also, in this case, the district court applied the wrong standard of review. They said they could not weigh the evidence. And, of course, to determine that might be a scintilla, when you look at the evidence on the other side, could be enough. In this case, the evidence from Dr. Marks, when you weigh it against everything else, is not substantial evidence. And that's what the Supreme Court has told us in Universal and Consolidated, that it's not just any evidence. It's not like in summary judgment where anything that would be enough. Here, substantial evidence, and it has to be construed liberally, and this statute is unusually protective of claimants. So in this particular case, without a lawyer to advocate, the judge didn't fulfill his duty. And if you, even looking, we don't get to substantial evidence because the judge didn't develop the record fully and didn't consider it. But if you did, you would find there is not substantial evidence to find she was not disabled. Thank you. Mr. Schneider, you've reserved time for rebuttal. Ms. Pollack? May it please the Court. Katherine Pollack with the Commissioner of Social Security. First of all, I'd like to start by correcting some of the statements that Appellant's counsel just made. With respect to the subsequent application, the second ALJ considered significantly different evidence. It was not the same evidence as what was considered in the case that's currently pending before this Court. Additionally, while Appellant has stated that the ALJ relied on the opinion of Dr. Marks, he omits that the ALJ also considered and weighed the opinion of Dr. Milker, who examined the claimant, and was and provided an opinion which also supported the ALJ's findings with respect to the R.C. determination in the Step 3 finding. Furthermore, as Appellant admits, the ALJ complied with what he had to do with respect to this Court's holding in LeMay. And additionally, the ALJ considered a complete record, considered treatment records from all of her providers. During the hearing, if you look at the transcript, he went with her through the different treating sources. She identified another source which the ALJ had not obtained records from. After the hearing, the ALJ subsequently developed the record further and filled the gap in the record that way. The Appellant has not argued that any treatment records are missing. And as I'm sure this Court is aware, the Court has held in multiple cases that where an ALJ considers a complete treatment history, as well as multiple opinions, as were present in this case, it's not further, the ALJ doesn't have to further and go get other treating source evidence. Here, the ALJ had sufficient evidence to determine the functioning of the Appellant in this case, and the ALJ's... I'm looking at how she presents, at least in the record, and I know it's not our job to find facts or do other than analyze whether there was substantial evidence supporting the determinations. But I have a, intuitively, or perhaps counterintuitively, I have a hard time saying that she's, that she could function and hold a full-time job. I mean, I'm mad, given the description of what her problems are. Right. I think that, however, in this case, the ALJ was informed by the... Right. Your adversary said that she can't get along with people, and that means the only job she would qualify is federal judge. And that would be a district judge. But at that point, the, as the ALJ noted, the consultative examiner found that she related adequately, she was cooperative throughout her treatment records, her while she did report social limitations, the ALJ did take those into account in determining her residual functional capacity and limited her to only occasional interaction with others. In fact, actually, if you go to the hearing transcript, the VE actually testified that the jobs that she required would even be, she'd be able to perform them at even a minimal amount of interaction with others. So the ALJ accommodated those difficulties in the RFC determination. Well, another correction was that the Dr. Melker, who was the consultative examiner, found that she did not find moderate difficulties in concentrating. He found that she had intact concentrating, ability to concentrate. Additionally, while they did note social limitations, they were only moderate, which were, again, accommodated in the RFC determination. In this case, contrary to what Appellant states, the ALJ fully considered the treatment notes in determining the functioning. While Appellant argues that the ALJ didn't weigh those, that was not required. There was nothing in the evidence in the record that spoke to functionality, to work functionality. The ALJ, though, did give due consideration to the treatment notes and discussed them throughout the opinion. And you can fully understand the ALJ's analysis and how he did that. Furthermore, the ALJ also considered the Appellant's activities. She reported that she was working on an Etsy online store. She had multiple online stores that she reported that she spent many hours on. Additionally, in the record, she reported that she had taken a house painting job during the relevant period. She also reported that she was taking a census, an exam to be a census worker, and was working for a family member. Right. So these are all activities, which, which also But they're individual, individual sort of operations. You've got to be a solo practitioner, essentially, in all of these. No offense to our profession. I don't know about house painter, but perhaps some of the other, the other I've painted a lot of houses, and I've done it by myself. So, I guess. Am I right that the ALJ did not specify what weight he accorded the record evidence from Ms. Goff's treating physicians? Right, again, as I stated, the ALJ did discuss those records, but there is nothing in those records that spoke to, to work functionality. So while you can see throughout the record how the ALJ gave, gave consideration to them. In effect, you're arguing, I just want to make sure I understand you're not saying that that was proper. You're saying it was harmless error because of he, he in effect looked at all the stuff. I think that's what the court has to consider is that, I mean, when, when the, when the the regulations speak about medical opinion evidence, they talk about evidence that speaks to functionality. And there wasn't anything that the appellant has pointed to, anything specific with respect to her functionality that the ALJ failed to weigh. The ALJ did consider her treatment records throughout. I believe I would point this court to Corbier, which is a recent decision, which kind of dealt with the same issue and found that where the ALJ considered the treatment notes as the ALJ did in this case, nothing more was required of him. Furthermore, I would just note that with respect to appellant's argument that the ALJ was required to obtain further medical opinion evidence from a treating source. I would also note that appellant's, appellant's counsel represented her before the appeals counsel, as well as the district court and this court now, and has not provided any, any further evidence from any medical source. Furthermore, I would just note that as stated, the ALJ considered significant evidence, the opinion of the state agency consultant, Dr. Marks, the opinion of Dr. Melker, the consultant examiner, both of those psychologists found that she had no more than moderate limitations in any area, which was supportive of the ALJ's finding. Additionally, the treatment notes, which reflect that her medication regimen was stable throughout the relevant period, she was engaging in the aforementioned activities. Additionally, many times throughout the record, her treating, treating psychologist, not psychologist, counselor noted that she had normal mood, but she was cooperative. So the ALJ gave due consideration to the evidence and didn't discount her, her, her concerns and, and limited her based on her, her difficulties dealing with stress and social limitations in the RFC determination. So is it the commissioner's position, just so I'm clear on this, that the subsequent decision has no bearing on our consideration of any of this, these issues? Correct. The ALJ in the sub, was a different ALJ. But if it's, if it's a, a failure of proof, then I'll lay out my conundrum and for what it's worth, which may be zero. We have a determination by the agency as of the date of the decision of the ALJ and going forward that she is disabled. And we know from reading that decision, which of course we're permitted to do, that there was some live testimony and all of that. So what we really have in the first go round of, of her application for the period under consideration in this case is, is essentially a failure of proof. It seems to me, or that's one way to look at what's before us. Where she did not meet her burden to get adequate evidence before the agency and demonstrate to the agency's satisfaction that she was disabled as she was able to do once she had assistance and put in proof. I would respond to that two ways. The first is that there was a complete record in this case. The ALJ considered two medical opinions by two psychologists. Psychologists. One was an examining and one was a written one, was, and who was, conducted a full examination of her, asked her about all of her history, did a complete mental status examination. And additionally, the, the review physician, psychologist rather, also considered significant treatment records in determining her functioning. Where opposed to the subsequent case, the ALJ in that case was a different, different ALJ. They considered, they considered significantly different evidence and much more recent evidence and no evidence that would bear on her. It's a different ALJ, right? I mean, we shouldn't, we're all one system, we're all part of that. Considered no evidence that, that would bear in any way on her, her functioning during the development period. None of the opinions were retrospective. No, I understand. Correct. It's just odd. Right. And again, the ALJ. Somebody who is functioning and able to have a job and then as of the date that she's determined to be functioning and having, able to, to perform a job, up to the point of that decision right after that, she's disabled according to the agency. And there's, there's several cases by this Court that have addressed that issue and have found that even, you know, even if somebody's found disabled the day after the, the relevant period in this case, that really has no bearing on the, the period at issue. I, I accept that. And I can point the Court to some if, if that would be helpful. All right. Well, thank you. Thank you, Ms. Pollack. Mr. Schneider, you've reserved some time for rebuttal. Thank you. My client, Rochelle Goff, was approved for electroshock therapy, electroconvulsive therapy. That's really reserved for the most serious cases of depression. She was suicidal twice and was admitted to a hospital. They were regularly adjusting her meds just to help keep her alive. In this case, allowing a judge to rely on the two consultative examiners instead of the treating doctors just goes against the, the, the body of case law from this Court that normally you give the dominant weight to the treating sources. And Dr. Melcher was not even totally credited by the ALJ because my client said on a particular day she was not currently using marijuana, and there was no evidence she was on that particular day. There really, another thing that occurred to me is there's a mental, here's a woman with this history of hospitalizations, of suicides, of taking Klonopin and Abilify, and she had taken it that morning, so she was heavily sedated. And she had a mental health counselor with her, and the judge said, you're just here to observe, you can't testify. It seems to me that the judge could have and should have said, do you have anything that would assist me in determining this? She testified that making jewelry was therapeutic, and she never really sold a lot, and she painted for a few days. That does not show that she could work on a full-time, sustained basis. So I don't think we get to substantial evidence. But if we did, is there evidence that she could, would a reasonable person conclude after reading that record that she could work on a full-time, sustained basis? And I think the answer is no. So I think there is sufficient evidence, and you're allowed to consider the subsequent decision. It's not determinative, and it's not controlling. But it is instructive to you, as you were saying. So I think this is a case where there's enough evidence to find that she was disabled during this period. Thank you. Well, before you sit down, Ms. Pollack, I think, suggests, I'm not trying to put words in her mouth, that there is a case that says, thou shalt not, or it's not problematic, at least, which may be a different question, for this kind of thing to occur. That is, somebody is found disabled immediately after she was found to be not disabled. And sometimes that happens because a person ages out, because they're in a different category. And so that would not be at all determinative. But I find no cases saying you can't consider it as one factor in your analysis. Okay. Thank you. Ms. Pollack, if you have something to the contrary and want to send us a letter, that's fine. You're not required to do that, but I didn't want to leave that point. No, I know there have just been multiple cases where this Court has held that a subsequent favorable decision really has no bearing and does not have evidence in and of itself, but is a decision based on evidence. And some of those cases are Rivera, Mancuso, Cage, and Karen, and Polly Nice. So there's been multiple decisions, not all of which were the day after, but some of which were. Got it. Good. Thank you both.